**IN THE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAROLYN BRIDGET, GLEN BRIDGET, MARQUIS SWANIGAN, MARSHAWN SWANIGAN, MIA SWANIGAN, DURRELL HARRIS, Plaintiffs, | ) | Case No. 13 CV 08269 |
| | ) | Hon. John Z. Lee Presiding Judge |
| vs. | ) | |
| SERGEANT FRANKLIN PAZ JR. and OFFICERS, SHALAINE ENAHORA, CLIFFORD RUSSELL JR., ROBERT WHEELER, CITY OF CHICAGO and MICHAEL MERCHANT, Defendants. | ) | |

**FIFTH AMENDED COMPLAINT**

NOW COMES the Plaintiffs, CAROLYN BRIDGET, GLEN BRIDGET, MARQUIS SWANIGAN, MARSHAWN SWANIGAN, MIA SWANIGAN and DURRELL HARRIS by and through their Attorney Steven J. Seidman of Seidman, Margulis & Fairman, LLC, and for her Fifth Amended Complaint against the Defendants states the following:

1. Plaintiffs bring this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §1331 and § 1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

2. This Court has jurisdiction pursuant to the following statues:

   a. 28 U.S.C. 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

   b. 28 U.S.C. 1342 (3) and (4), which gives district court's jurisdiction over actions to secure Civil Rights extended by the United States government.

3. Venue is appropriate in this judicial district under 28 U.S.C. 1391(b) because the events that gave rise to this Complaint occurred in this district.

**PARTIES**

4. Plaintiffs are citizens of the United States and reside in the County of Cook, State of Illinois, which is in this judicial district.

5. Plaintiff CAROLYN BRIDGET is the sister of Plaintiff GLEN BRIDGET.

6. Together Plaintiffs CAROLYN BRIDGET and GLEN BRIDGET lawfully own the real property, a two (2) Flat building, located at 7329 S. Dorchester Ave. Chicago, Illinois 60619, which is the subject of this complaint. They lived in the property for over twenty-six (26) years after the property was given to them by their mother.

7. Plaintiff CAROLYN BRIDGET lived on the 2nd Floor of the property with her children, her daughter's boyfriend and four miniature dogs: KABOODLES, BUSTER, ECHO and REESE.

8. Plaintiff GLEN BRIDGET lived with four dogs: BRUNO, ROCKY, DUKE and DUTCHES at 7329 S. Dorchester Ave. Chicago, Illinois 60619.

9. MARK SWANIGAN is the adult son of Plaintiff CARYLON BRIDGET, had previously lived with CAROLYN BRIDGET, moved out months prior to October 2013, but continues to live in Chicago, Illinois 60619.

10. Plaintiffs MARQUIS SWANIGAN and MARSHAWN SWANIGAN are minor children of CAROLYN BRIDGET and at all times of this complaint lived with their mother at 7329 S. Dorchester Ave. Chicago, Illinois 60619.

11. Plaintiff MIA SWANIGAN is the adult daughter of Plaintiff CAROLYN BRIDGET and at all times relevant lived at 7329 S. Dorchester Ave. Chicago, Illinois 60619 and is the girlfriend of Plaintiff DURRELL HARRIS.

12. Plaintiff DURRELL HARRIS is the boyfriend of MIA SWANIGAN and lived with CAROLYN BRIDGET for two (2) years. He has a disability and has Multiple Sclerosis (MS).

13. Plaintiff CAROLYN BRIDGET has four (4) miniature dogs: KABOODLES, a (7) year old female Pekingese, BUSTER, a (7) year old male Shih Tzu, ECHO, a (7) year old male mixed breed Terra and Chihuahua and REESE, a (3) year old male mixed breed Pomeranian and Pekingese who lived with her. She has had them since they were puppies.

14. Plaintiff GLEN BRIDGET also owned dogs: BRUNO, a (10) year old male mixed breed Pit-bull and Bullmaster, ROCKY, a (10) year old male African Corso, DUKE, a (5) year old male German Sheppard and DUTCHES, a (7) year old female Bullmaster who used to live with him. He had all of them since they were puppies.

15. Defendant FRANKLIN PAZ JR. is a Sergeant of the City of Chicago Police Department which is an agent of the CITY OF CHICAGO, County of Cook, State of Illinois, which is in this jurisdictional district.

16. Defendant OFFICER SHALAINE ENAHORA is an officer with the City of Chicago Police Department and was at all times acting under the color of state law and under the direct direction of Defendant Sergeant FRANKLIN PAZ. Said the City of Chicago Police Department, which is an agent of the CITY OF CHICAGO, County of Cook, State of Illinois, which is in this jurisdictional district.

17. Defendant OFFICER CLIFFORD RUSSELL JR. is an officer with the City of Chicago Police Department and was at all times acting under the color of state law and under the City of

Chicago Police Department through the direction of Sergeant FRANKLIN PAZ. The City of Chicago Police Department, which is an agent of the CITY OF CHICAGO, County of Cook, State of Illinois, which is in this jurisdictional district.

18. Defendant OFFICER ROBERT WHEELER is an officer with the City of Chicago Police Department and was at all times acting under the color of state law and under the direct direction of Sergeant FRANKLIN PAZ.

19. Defendant MICHAEL MERCHANT is the Building Commissioner of the City of Chicago Department of Buildings under whose authority and direction, on October 25, 2013, the Plaintiffs' home was boarded without notice.

20. Additionally, unknown police officers of the City of Chicago Police Department, which is an agent of the Defendant, CITY OF CHICAGO, County of Cook, State of Illinois of this jurisdictional district, who participated in the incidences following below of October 25, 2013. The exact names of the officers are unknown at this time, but at all times relevant these unknown officers accompanied Defendant Sergeant FRANKLIN PAZ JR. in their official capacity in the fraudulent acts complained of in this matter.

21. The Chicago Police Department is a governmental agency for the Defendant CITY OF CHICAGO, County of Cook, State of Illinois, which is in this jurisdictional district.

22. City of Chicago Department of Buildings is a governmental agency for the Defendant CITY OF CHICAGO, County of Cook, State of Illinois, which is in this jurisdictional district.

23. The Defendant CITY OF CHICAGO is a duly incorporated municipal corporation and is the employer and principal of the DEFENDANT OFFICERS and/or employees referred to in this Complaint (as indicated in the *Monell* claim alleged herein). At all times material to this complaint, the DEFENDANT OFFICERS and CITY of CHICAGO employees referred to in this

Complaint, were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the City of Chicago.

24. Defendants are sued in their individual and official capacities as government officials whose duty to enforce municipal code regulations are administered in accordance with state law.

**GENERAL ALLEGATIONS**

25. October 25, 2013 was a cold winter day in the City of Chicago.

26. On October 25, 2013 Plaintiffs' CAROLYN BRIDGET, MIA SWANIGAN, and DURRELL HARRIS were in their home, located at 7331 S. Dorchester Ave. Chicago, IL, before they heard a knock at the door. When opened, City of Chicago Police Department Sergeant FRANKLIN PAZ JR., accompanied by Officers SHALAINE ENAHORA, CLIFFORD RUSSELL JR., ROBERT WHEELER, JOHN and JANE DOES barged in the door looking for MARK SWANIGAN.

27. The minor children, Plaintiffs MARQUIS SWANIGAN and MARSHAWN SWANIGAN also live at the Dorchester Avenue address, but were in school and not there before the police barged in the door to the house.

28. Plaintiff GLEN BRIDGET, who also lives at the same address on the first floor, was at work at the time of the incident.

29. Said Plaintiffs, in para 22 who were home, were brought into the living room, at gun point, by over five (5) CHICAGO POLICE OFFICERS ("DEFENDANT OFFICERS"), INCLUDING, Defendants SERGEANT FRANKLIN PAZ JR., SHALAINE ENAHORA, and CLIFFORD RUSSELL JR. and ROBERT WHEELER while the Property was warrantless search ensued, presumably for MARK SWANIGAN.

30. Plaintiff CAROLYN BRIDGET told Sergeant FRANKLIN PAZ JR. that MARK SWANIGAN did not live there and Officer FRANKLIN PAZ called her a "liar."

31. After searching the house and not finding MARK SWANIGAN, the Defendant Sergeant FRANKLIN PAZ JR. and the other Defendants CHICAGO POLICE OFFICERS told the Plaintiffs that they had to vacate the premises immediately and go to a shelter and led them out.

32. Sergeant FRANKLIN PAZ JR. made some phone calls and immediately an inspector from the City of Chicago Department of Buildings began to board up the house. Plaintiffs were told to leave their home with only what they could immediately place in their hands.

33. On October 25, 2013 Plaintiff GLEN BRIDGET, who was at work, had locked his first floor unit as usual, because he lived alone. Defendant Sergeant FRANKLIN PAZ JR. demanded that Plaintiff CAROLYN BRIDGET open the door to the first floor unit or "it would be broken in."

34. Plaintiff CAROLYN BRIDGET had keys to her brother's unit and prior to Sergeant FRANKLIN PAZ JR. demanding that she open her brother's unit without his permission, she told Sergeant FRANKLIN PAZ JR. that her brother, GLEN BRIDGET, had a dog inside his home. Sergeant FRANKLIN PAZ JR. threaten to shoot the dog inside the home if she did not open the door. Plaintiff pleaded with Sergeant FRANKLIN PAZ JR. not to shoot the dog and proceeded to unlock her brother's unit. Defendant Sergeant FRANKLIN PAZ JR. entered and immediately seized BRUNO, the housed dog.

35. Defendant Sergeant FRANKLIN PAZ, at gun point, demanded that Plaintiff CAROLYN BRIDGET open the lock which was on the backyard gate. Plaintiff GLEN BRIDGET's dogs which were outside barked. Sergeant FANKLIN PAZ JR. then threatened to shoot those dogs:

ROCKY, DUKE and DUTCHES if Plaintiff CAROLYN BRIDGET denied him access to the backyard. Plaintiff then proceeded to unlock the lock.

36. Defendant Sergeant FRANKLIN PAZ JR. then called the Animal Control. All of Plaintiff GLEN BRIDGET's dogs were then taken to a dog pound and were euthanized. Plaintiff GLEN BRIDGET'S cars, which were in the back of his property in a locked gate, were then towed from his property along with CAROLYN BRIDGET'S truck. The truck was eventually crushed.

37. Plaintiff CAROLYN BRIDGET protested from being put out of her home and refused to go to a shelter with her children. A City of Chicago Police Department Officer, who upon belief was defendant SHALAINE ENAHORA, then told her that "if she did not go and get her kids from school immediately that they would be picked up by Police and given to Department of Children and Family Services (DCFS) to take custody and that she would be arrested."

38. A DCFS Social Worker was then called to the scene by one of the CITY OF CHICAGO POLICE OFFICERS as Plaintiff CAROYLN BRIDGET went to pick up her children from school. The other Plaintiffs in the house were escorted out of the house onto the street as the City of Chicago Department of Buildings boarded up the house without notice and with the neighbors standing outside watching.

39. None of the Plaintiffs were allowed to gather any substantial belonging from the house prior to the boarding up the property. None of the Plaintiffs were given any type of notice prior to Sergeant FRANKLY PAZ JR. Originally knocking on the door. They had no place to go and were thrown out in the cold.

40. The inspection and boarding of the house was unwarranted, without notice, by the City of Chicago Department of Buildings and with the help of Defendant CPD Sergeant FRANKLIN PAZ JR., and other Defendant Officers and the City of Chicago Police Department

41. On October 25, 2013 all Plaintiffs were immediately vacated from said Real Property and have to this date been restricted from repossessing Property which has been now broken into at least twice.

42. Plaintiffs lawfully owned the real property, all pets, clothing, medicine, nebulizer and other household items including: appliances, jewelry, legal papers including birth certificates, social security cards, medication and cars inside and the back of the property located at 7329 S. Dorchester Ave. Chicago, IL 60619 on October 25, 2013.

43. Defendants unlawfully caused Plaintiff's dogs to be seized and euthanized, as well as, cars seized and impounded.

44. Plaintiff GLEN BRIDGET is a mechanic and was called from work on October 25, 2013. When he arrived at this home, he gave the police titles for all of his property, which was seized anyway. He was arrested on false charges and jailed and had to pay to retrieve his property, some of which he never received.

45. All charges against Plaintiffs' CAROLYN BRIDGET, GLEN BRIDGET and other Plaintiffs were created by the City of Chicago Police Department and were eventually dropped. However, Plaintiffs have a lawsuit pending against them in the Circuit Court of Cook County, Illinois Municipal Department-First District and are being fined $45,500 per day. (Exhibit A)

46. Plaintiffs' property was seized in violation of state and federal due process laws.

47. Plaintiff's have suffered additional monetary and property loss due to foreclosure proceedings commenced against them as a result of the actions of DEFENDANTS.

48. Due to Plaintiffs having no family and thus no place to live in the CITY OF CHICAGO, they had to travel out of state and suffered irreparable damages in conjunction with the unlawful seizures, arrest, killing of their pets and destruction of their cars.

49. Plaintiff MARQUIS and MARSHAWN SWANIGAN missed three (3) months of school after they were put out of their home and were so far behind in school that they were held back a grade. Both minors suffered insomnia and post-traumatic stress disorder (PTSD) from the incident complained of and had an increase in medication for the conditions.

50. Plaintiff GLEN BRIDGET had to sleep in his car in order to remain in Chicago and not lose his job and suffered mental anguish from his dogs being killed, not being able to enter his home, false arrest and fear of losing his job due to the arrest.

51. Plaintiff MIA SWANGIAN had to drive her mother and her siblings out of state and lost her job. Plaintiff MIA SWANGIAN suffered mental anguish for the loss of her job as well as the police removing her from her house at gunpoint.

52. Plaintiff DURRELL HARRIS suffered damages from being put out of his home without his belongings at gun point by the Chicago Police Officers.

53. On or about October 25, 2013, PLAINTIFFS did not obstruct justice, resist arrest and/or batter and/or assault the DEFENDANT OFFICERS or any employees of the Defendant CITY OF CHICAGO referred to in this Complaint.

54. The PLAINTIFF was also caused to suffer financial loss and out of pocket expenses, directly correlated to being arrested and cited for municipal violations under false pretenses.

55. The DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO within the past ten years engaged in multiple, repeated, and continuous acts, *inter alia*, the complained of police misconduct and false charges of PLAINTIFFS which constituted extortion and fraud under Illinois state law and federal law, and which further constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961 et seq.

56. The DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO complained of misconduct was inextricably intertwined with his authority and activities as an employee of the Chicago Police Department and City Of Chicago Department Of Buildings.

57. The DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO's ability to intimidate lawful citizens such as PLAINTIFFS with the power and threat of arrest and prosecution was made possible by and through the Defendants' employment as a police officers and employees of the Defendant CITY OF CHICAGO, Chicago Police Department and City Of Chicago Department Of Buildings.

58. The DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO'S illegal activities were clearly helped along by their authority as Chicago Police Officers and City of Chicago Building Inspectors and by the fear and intimidation which a police officer such as DEFENDANT OFFICERS and City of Chicago Building Inspectors uniquely have the ability to engender in others by virtue of their positions.

59. All of DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO complained of police misconduct and false charges were intended and did earn the Chicago Police Department and CITY OF CHICAGO money and revenue.

**EQUAL PROTECTION**

60. With regard to an Equal Protection Claim, PLAINTIFFS were a "Class of One." In that regard, PLAINTIFFS were treated with ill will and/or discriminated against with no rational basis. PLAINTIFFS were intentionally treated differently as a result of having a potential claim and witnessing police misconduct attributable to the DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO. The DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO acted with discriminatory intent by treating PLAINTIFFS

differently and trying to cause further injury to PLAINTIFFS by generating false evidence against PLAINTIFFS.

61. Further, PLAINTIFFS were similarly situated to other individuals involved in incidents with police officers and employees of the Defendant CITY OF CHICAGO that were not the victims of police misconduct and potential claimants against Police Officers and employees of the Defendant CITY OF CHICAGO.

**COUNT I- 42 U.S.C. 1983**
**UNREASONABLE SEARCH AND SEIZURES OF REAL PROPERTY**

62. Plaintiffs re-allege all allegations as set forth in the above paragraphs.

63. The Chicago Municipal Building Code (CMBC) is the codified and accepted rule of law within the state of Illinois, for properties located in Chicago, Illinois, Cook County.

64. State regulatory schemes under the CITY OF CHICAGO Municipal Code, 13-12-130, Dangerous or unsafe buildings requires a written notice for the immediate seizure of a building:

> "If any building shall be found in a dangerous and unsafe condition or uncompleted and abandoned, the building commissioner or the fire commissioner shall notify in writing the owner or owners thereof, directing the owner or owners to put such building in a safe condition, to enclose or to demolish it."

65. The CITY OF CHICAGO Municipal Code, 13-12-131 City board up provision states:

> "If, after ten days subsequent to the giving of the notice as provided in Section 13-12-130, the owner or owners fail to enclose the unsafe or uncompleted building, the city may board up such building at the owner's expense."

66. Federal regulatory schemes require state actors to have reasonable suspicion to warrant search and seizure of one's personal property. (4th, 14th Amendments )

67. Defendants, Officers FRANKLIN PAZ JR., SHALAINE ENAHORA, CLIFFORD RUSSELL JR., ROBERT WHEELER of the City of Chicago Police Department searched Plaintiffs' property for MARK SWANIGAN and since they did not find him and did not believe

that he no longer lived there, on October 25, 2013 they seized the property, immediately on the same day, by making unreasonable claims and making it impossible for them to correct any noted problems to their home as made by Defendant CITY OF CHICAGO, City of Chicago Department of Buildings and Commissioner MICHAEL MERCHANT as they were forced to leave.

68. October 25, 2013 was a cloudy cold day with a windshield factor of 26 mph causing the temperature to drop to 29 degrees in Chicago. Clearly these temperatures were a danger to the health of those un-housed. Plaintiffs, wrongfully evicted, had no place to go and thus were forced on the streets until they found a place. They were fully surprised by the inspection which was done that day and there was never any warning regarding the violations.

69. Pursuant to the state statutory scheme, the CITY OF CHICAGO, City of Chicago Department of Buildings and Commissioner MICHAEL MERCHANT may not authorize an evictions when the weather conditions would cause danger to those evicted.

70. Defendants' FRANKLIN PAZ and THE CITY OF CHICAGO claims were only made that day, a cold winter day, and were instigated without probable cause. Defendants' claims against Plaintiffs and Plaintiffs' property were made with malice, malicious intent, were not due to any concern for the safety of the family and were not under a valid warrant for injunction.

71. Defendant CPD Sergeant FRANKLIN PAZ, and other JOHN DOES under his authority, had routinely and systematically violated Plaintiffs' Fourth Amendment rights against unreasonable search and seizure on prior occasions at the same location and Plaintiff CAROLYN BRIDGET had reported the illegal searches on prior occasions to City of Chicago Police Department. They were on notice about his repeated violations to the Plaintiffs. (See Exhibit Group B).

72. The City of Chicago Police Department has a custom, pattern, practice, and/or policy of promoting, ignoring, and/or failing to discipline personnel acting under its authority who act against, and violate, citizens' Fourth Amendment rights.

73. Plaintiffs were not only permanently put out of their house without their belongings, but the CITY OF CHICAGO through the City of Chicago Department of Buildings has continued to prosecute them for not fixing violations reported from October 25, 2013, the same day of the incident. They have no way of entering, let alone to fix, the alleged violations of the property.

74. The real property consequently went into foreclosure proceedings and Plaintiffs were forced to file Bankruptcy due to the unlawful search and seizure by the Defendants. (See Exhibit C).

75. The show of force initiated by and the failure to intervene in the use of said force by the DEFENDANT OFFICERS caused an unreasonable seizure to the PLAINTIFFS.

76. The DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO charged and/or participated in the charging of PLAINTIFF with criminal activity, fraudulent municipal violations, and arrested, participated in the arrest and/or failed to prevent the arrest and fraudulent charging of the PLAINTIFFS notwithstanding the fact that the DEFENDANT OFFICERS and employees of Defendant CITY OF CHICAGO failed to observe and/or learn that PLAINTIFFS had committed criminal activity of any sort. The DEFENDANT OFFICERS and employees of Defendant CITY OF CHICAGO did not have probable cause to believe that criminal activity or municipal violations took place relative to the PLAINTIFFS.

77. Defendants unlawfully denied Plaintiffs' entry to their Real Property to retrieve dogs, cars and other personal items.

78. Plaintiffs were not served with proper notice prior to having their real and personal property seized, in violation of state and federal due process laws.

79. Defendants unlawfully caused Plaintiff GLEN BRIDGET'S dogs to be killed and plaintiffs' CAROLYN BRIDGET AND GLEN BRIDGET cars to be seized, impounded and Plaintiff CAROLYN BRIDGET'S car to be destroyed.

80. As a result of Defendants' actions, Plaintiffs have still been unable to retrieve any of their household items including clothes, medicine, nebulizer, important personal papers, appliances, etc.

81. Plaintiffs have suffered and will continue to suffer significant damages due to the Defendants actions' and seizure of their personal and Real Property.

WHEREFORE, the Plaintiffs request that this Court enter judgment against Defendants providing the following relief:

a) Enter a declaratory judgment that Defendants, collectively and individually, violated Plaintiffs' Fourth Amendment rights as applied to the States by the Fourteenth Amendment to the United States Constitution, when they unlawfully seized Plaintiffs' dogs and caused to be impounded Plaintiff's cars without reasonable suspicion or probable cause.

b) Enter a declaratory judgment that Defendants, collectively and individually, violated Plaintiffs' Fourth Amendment rights as applied to the States by the Fourteenth Amendment to the United States Constitution, when Defendants engaged in an unlawful search, issued unreasonable complaints against Plaintiffs' property, causing seizure of real property.

c) Enter a declaratory judgment against Defendants-CPD, a municipality, has a custom, pattern, practice, and/or policy of promoting, ignoring, and/or failing to discipline personnel acting under its authority who act against, and violate, citizens' Fourth Amendment rights.

d) Enter an award for the Plaintiffs' in the amount of $500,000 for costs and expenses.

e) Enter an award of fees pursuant to 42 USC 1988 and 13.

f) That the Court grants such other and further relief as the Court may deem just and proper.

**Count II- 42 U.S.C. 1983- MONELL**

82. Plaintiffs re-allege all allegations as set forth in the above paragraphs.

83. Defendants violated Plaintiffs Constitutional rights of due process by not having a proper inspection of the property and notifying them regarding any property violations so that they could have repaired them prior to being forced out of their home.

84. Any City of Chicago Department of Buildings code or policy that would put citizens out of their home in at temperatures of 26 without a place to go and without notice to them and would not allow them to gather belongings is a deficient policy, practice or custom of the municipality.

*85.* The inspector, under the authority of the Commissioner MICHAEL MERCHANT who carried out this Constitutional violation against the Plaintiffs, in the manner in which it was done, did so with "deliberate indifference" to the known or obvious consequences.

86. Plaintiff's suffered injury in the form of harassment, loss of their family pets, loss of their family home, loss of job, psychological damage from fear of being at gun point, dogs being killed, sleeping in cars, being forced into bankruptcy and having municipal complaints and lawsuits filed against them were all direct result of the City of Chicago Police Department as well as the City of Chicago Department of Buildings violations on October 25, 2013.

WHEREFORE, the Plaintiffs request that this Court enter judgment against Defendants providing the following relief:

a) Enter a declaratory judgment that Defendants, collectively and individually, violated Plaintiffs' Fourth Amendment rights as applied to the States by the Fourteenth Amendment to the United States Constitution, when they unlawfully

seized Plaintiffs' dogs and caused to be impounded Plaintiff's cars without reasonable suspicion or probable cause or following the laws and policies of the City of Chicago.

b) Enter a declaratory judgment that Defendants, collectively and individually, violated Plaintiffs' Fourth Amendment rights as applied to the States by the Fourteenth Amendment to the United States Constitution, when maliciously prosecuting Plaintiffs by issuing unreasonable complaints against Plaintiffs' property, causing seizure of real property.

c) Enter a declaratory judgment against Defendants, a municipality, that has a custom, pattern, practice, and/or policy of promoting, ignoring, and/or failing to discipline personnel acting under its authority who act against, and violate, citizens' Constitutional rights.

d) Enter an award for the Plaintiffs' in the amount of $500,000 for costs and expenses.

e) Enter an award of fees pursuant to 42 USC 1988 and 13.

f) That the Court grants such other and further relief as the Court may deem just and proper.

**COUNT III - EQUAL PROTECTION**

87. Plaintiffs re-allege all allegations as set forth in the above paragraphs.

88. The actions of THE DEFENDANT OFFICERS violated the Equal Protection clause to the United States Constitution.

89. The aforementioned actions of said DEFENDANT OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, PLAINTIFFS demand compensatory damages from the DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO. PLAINTIFFS also demand punitive damages, costs and attorney's fees against the DEFENDANT OFFICERS and employees of the Defendant CITY OF CHICAGO. PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

**DEMAND FOR JURY TRIAL**

90. PLAINTIFFS demand trial by jury.

Respectfully submitted:

s/ Steven J. Seidman
Steven J. Seidman, attorney for Plaintiffs

Steven J. Seidman
Sean M. Baker
Seidman, Margulis & Fairman, LLC
Two First National Plaza
20 South Clark Street, Suite 700
Chicago, IL 60603
(312) 781-1977